UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                       Case No. 1:23-cr-20168

v.                                        Honorable Thomas L. Ludington
                                            United States District Judge

KIJUAN D. ROSS,

               Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND
MOTION TO DISMISS**

      After organizing and observing a controlled buy of crystal methamphetamine between Defendant Kijuan Ross and a confidential informant, police searched Defendant's house on August 31, 2022 and seized nearly 250 grams of crystal methamphetamine, 35 grams of cocaine, and five firearms—one of which was modified to operate as a fully automatic machine gun. Accordingly, Defendant was indicted for possessing controlled substances, possessing weapons in furtherance of a drug trafficking crime, possessing a machine gun, and being a felon in possession of a firearm. Defendant now seeks (1) suppression of the evidence seized during the August 31, 2022 search for lack of probable cause and exigency to justify a "no-knock warrant" and (2) dismissal of the felon-in-possession Count as unconstitutional in light of the Supreme Court's recent holding in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*. But, as explained hereafter, the search was supported by sufficient probable cause and exigency and *Bruen* does not make the felon-in-possession statute unconstitutional facially or as applied to Defendant. Accordingly, Defendant's Motion to Suppress and Motion to Dismiss will both be denied.

**I.**

In late August 2022, Trooper William Smith of the Michigan State Police (MSP), assigned to the Bay Area Narcotics Enforcement Team (BAYANET), organized a "controlled buy" of crystal methamphetamine using a confidential informant. ECF No. 25-1 at PageID.85. The informant told MSP troopers that he knew Defendant Kijuan Ross sold crystal methamphetamine. *Id.* at PageID.85–86. While Trooper Smith was present, the informant contacted Defendant and the two agreed on the amount of methamphetamine to be sold, the purchase price, and the meetup location—Defendant's Bloomfield Boulevard house in Saginaw, Michigan. *Id.* at PageID.86; *see also* ECF No. 1 at PageID.3.

Just before the controlled buy, Trooper Smith ensured that the confidential informant did not have any drugs or money on him and provided the informant with BAYANET funds to purchase only the agreed-on amount of methamphetamine. *See id.* at PageID.85. Trooper Smith then observed the informant enter Defendant's house and exit soon after with the agreed-on amount of crystal methamphetamine in a plastic bag. *Id.* at PageID.86. The informant confirmed that Defendant had given him the methamphetamine inside the house, in exchange for the provided funds. *Id.* The informant also told Trooper Smith that Defendant's door was barricaded by two 2x4 boards attached to the house's foundation, known as "dead man" locks,[1] and that there was a camera at the front of Defendant's house. *See id.* A subsequent criminal-history check revealed Defendant had been convicted of felony unarmed robbery in 2003, felony assaulting, resisting, or

---

[1] Although not stated within the search warrant affidavit, Trooper Smith testified at an October 17, 2023 evidentiary hearing that dead man locks prevent officers from entering a residence in a timely manner, exposing the officers to potential harm and potentially allowing a criminal defendant time to destroy sought-after evidence.

obstructing police and felony tampering with evidence in 2004, and misdemeanor use of controlled substances in 2014. *Id.*

Trooper Smith then applied for a warrant to search Defendant's house and seize controlled substances, proceeds, firearms, and ammunition. *Id.* at PageID.85. In his affidavit, Trooper Smith described the controlled buy and explained, based on his training and nine years of law enforcement experience, that "those involved in the obtaining, manufacture, processing, compounding, sale and or delivery of illegal controlled substances routinely" (1) take and keep photographs and recordings of their illegal activities; (2) "maintain firearms and ammunition in an attempt to protect themselves [and] their illegal controlled substances[;]" (3) keep and maintain records of the amount of drugs they receive from suppliers and sell to customers; (4) keep records identifying their suppliers; (5) keep financial records; (6) make use of their personal residences to conduct their "illegal drug enterprise[;]" and (7) "lie or provide false information to the police[.]" *Id.* at PageID.86–87. Trooper Smith specifically sought a "no-knock" warrant "to ensure the safety of investigators and to prevent the destruction of evidence" throughout the search. *Id.* at PageID.87. Michigan District Judge Terry Clark found probable cause and authorized the warrant on August 30, 2022. *See id.* at PageID.88.

MSP troopers and BAYANET detectives executed the search warrant the next day. ECF No. 1 at PageID.3. But Defendant was not in his house at the time of the search. ECF No. 28-3 at PageID.117. Instead, just before the search, at approximately 5:26 AM, MSP troopers saw Defendant leave his driveway in a silver Nisan. *Id.* MSP troopers followed the car, conducted a traffic stop, and detained Defendant. *See id.* At 5:36 AM, while Defendant was detained, MSP troopers searched Defendant's unoccupied house. *Id.* Importantly, although authorized to perform a "no-knock" entry, MSP troopers announced "Police, Search Warrant" numerous times via a

marked patrol vehicle. *Id.* Body camera footage from an effectuating trooper confirms that the police knocked and announced their presence. *See* ECF No. 41.

The search of Defendant's house uncovered: (1) 246 grams of crystal methamphetamine; (2) 35.5 grams of cocaine; (3) controlled substance sale "indicators" including a glass measuring cup with residue, baggies, and a digital scale; (4) a loaded Feather 9mm semi-automatic rifle; (5) a loaded .22 caliber Ruger Mark IV semi-automatic pistol; (6) a loaded 5.7x29 Ruger semi-automatic pistol; (7) .40 caliber Smith & Wesson model M&P semi-automatic pistol; and (8) a loaded Glock 19 modified to operate as a fully automatic machinegun. ECF No. 1 at PageID.4–5. Importantly, the Feather 9mm rifle and two boxes of ammunition were found in plain view, resting on tables or chairs within Defendant's house. *See* ECF No. 26-1.

After the search, Defendant was advised of and waived his *Miranda* rights. ECF No. 1 at PageID.5. During an interview with Trooper Smith, Defendant confirmed he was the only resident of the Bloomfield Boulevard house and admitted to personal cocaine use, but denied knowledge of methamphetamine in the house. *Id.* Defendant was then indicted for possession with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a) and (b)(1)(B)(viii) (Count I); possession with intent to distribute cocaine base, 21 U.S.C. § 841(a) (Count II); possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(a)(i) (Count III); felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count IV); and possession of a machinegun, 18 U.S.C. § 922(o) (Count V). ECF No. 21.

Currently before this Court are (1) Defendant's Motion to Suppress "all evidence unlawfully seized" during the August 31 search, ECF No. 25, and (2) Defendant's Motion to Dismiss Count IV of the First Superseding Indictment, charging him with being a felon in possession, ECF No. 30. For reasons explained below, both Motions will be denied.

## II. Defendant's Motion to Suppress

Defendant seeks to suppress "all evidence unlawfully seized" during the August 31 search for two reasons. First, Defendant argues the warrant lacked probable cause because "the reliability of the confidential [informant] was not established." ECF No. 25 at PageID.75 (emphasis omitted). Second, Defendant argues the search was unreasonable and violated the Fourth Amendment because no exigent circumstances existed to justify the "no-knock" warrant, as detailed in Trooper Smith's affidavit. *Id.* at PageID.80.

The Government responds that (1) a failure to knock and announce does not result in suppression, ECF No. 28 at PageID.107–08; (2) the warrant was supported by sufficient probable cause, *id.* at PageID.104–07, and (3) even if the warrant lacked probable cause, MSP troopers who effectuated the search relied on it in good faith, rendering suppression inappropriate. *Id.* at PageID.109–10.

Defendant's Motion to Suppress will be denied because (1) probable cause supported the search and, even if probable cause was lacking, effectuating MSP troopers reasonably relied on the warrant in good faith; and (2) MSP troopers effectuating the search knocked and announced their presence and, even if they did not, violations of the knock and announce rule do not result in suppression under the exclusionary rule.

### A. Probable Cause and Good Faith Reliance

### 1. Probable Cause

The Fourth Amendment guarantees that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The test for probable cause is "not reduceable to 'precise definition or quantification.'" *Smith v. City of Wyoming*, 821 F.3d 697 (6th

Cir. 2016), *as amended* (May 18, 2016) (quoting *Fla. v. Harris*, 568 U.S. 237, 243 (2013) (quoting *Maryland v. Pringle*, 540 U.S. 366 at 371, (2003)). Instead, probable cause is a "'practical and common-sensical standard' based on 'the totality of the circumstances.'" *Id.* (quoting *Harris*, 568 U.S. at 243). Probable cause is satisfied when the facts and circumstances within an officer's knowledge are "sufficient . . . to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Hughes*, 606 F.3d 311, 320 (6th Cir. 2010) (quoting *United States v. Davis* 430 F.3d 345, 352 (6th Cir.2005) and *Brinegar v. United States*, 388 U.S. 160 (1949)). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Pringle*, 540 U.S. at 371, (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). This "reasonable ground for belief" must be more than mere suspicion but may be less than a prima facie proof. *United States v. Collazo*, 818 F.3d 247, 254 (6th Cir. 2016); *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). Importantly this Court affords "great deference" to a magistrate's finding of probable cause and will not set such finding aside unless it was arbitrary. *United States v. Hawkins*, 278 F. App'x 629, at 631–32 (6th Cir. 2008).

When most of the information within a warrant affidavit "comes from confidential sources . . . courts must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (quoting *United States v. Helton*, 314 F.3d. 812, 819 (6th Cir. 2003)). Indicia of an informant's reliability includes "information about the confidential informant's previous tips, the length or nature of the relationship between the informant and [the officer-affiant], and any indication that the magistrate judge learned of the informant's identity" when authorizing the warrant. *Dyer*, 580 F.3d at 391. On the other hand, "[i]n the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police

corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005); *see also Dyer*, 580 F.3d at 392 ("[O]nly when no substantial supporting evidence exists within the four corners of the affidavit as to the informant's reliability do courts require substantial independent police corroboration."). Importantly, "this independent police corroboration may be established by a police-monitored controlled buy[.]" *Hawkins*, 278 F. App'x at 635. Indeed, "officers frequently employ controlled purchases of illegal narcotics . . . to establish probable cause in circumstances where they cannot personally vouch for the reliability and credibility of a particular informant[.]" *United States v. Jackson*, 470 F.3d. 299, 308 (6th Cir. 2006).

Trooper Smith's organization and observation of the controlled buy provides sufficient grounds for probable cause. In *United States v. Hawkins*, the Sixth Circuit found probable cause to search because, even though "there were no statements in the warrant affidavit about the reliability of the confidential informant," the officer "took the necessary precautions before and after" the controlled buy. *Hawkins*, 278 F. App'x. at 635. These precautions included searching the informant prior to the controlled buy to ensure the informant did not possess any controlled substances, firearms, or funds aside from those provided by the officer; observing the informant enter and exit the defendant's house to purchase the controlled substances; and subsequently searching and de-briefing the informant after the controlled buy. *Id.* at 630.

True, like the affidavit in *Hawkins*, Trooper Smith's affidavit did not contain any statements that supported the reliability of the confidential informant.[2] *See generally* ECF No. 25-

---

[2] For example, the affidavit was silent as to whether the informant provided prior tips to MSP troopers, how long the informant had worked with Trooper Smith, and whether Judge Clark, who authorized the warrant, ever learned the informant's identity. *See generally* ECF No. 25-1 at PageID.85–88. And although Trooper Smith testified at an October 17, 2023 evidentiary hearing that he had worked with this specific confidential informant on two prior occasions, this information was not contained in the search warrant affidavit. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("The task of the issuing [judge] is simply to make a practical, common-sense decision

1. But, as in *Hawkins*, the search is nevertheless supported by probable cause because the affidavit describes Trooper Smith's organization and observation of the controlled buy between the confidential informant and Defendant. *Id.* The affidavit specifically stated that Trooper Smith "met with the [informant] at a pre-determined meet location" before the controlled buy and observed the informant call Defendant to establish "a[n] amount of meth [to be purchased], and a buy location[.]" *Id.* at PageID.85–86. The affidavit also states that, before the controlled buy, Trooper Smith provided the informant with pre-recorded BAYANET funds for the purchase and MSP Troopers began surveilling Defendant's house—the buy location. *Id.* The affidavit further details that, during the controlled buy, Trooper Smith personally observed the informant enter and exit Defendant's house. *Id.* at PageID.86. Lastly, the affidavit states that, after the controlled buy, Trooper Smith met the informant who provided Trooper Smith with methamphetamine, confirmed that Defendant sold the methamphetamine in exchange for the BAYANET funds, and told Trooper Smith that Defendant had secured his front door with "dead man" locks and a security camera. *Id.* Here, as in *Hawkins*, Trooper Smith's "statements that he set up the controlled buy and took necessary precautions before and after the orchestrated purchase adequately corroborated the [informant's] information and, thus, provided sufficient probable cause for the issuance of the search warrant." *Hawkins*, 278 F. App'x at 635 (citing *United States v. Coffee*, 434 F.3d 887, 894 (6th Cir.2006), *cert. denied*, 547 U.S. 1158 (2006)).

The Sixth Circuit has repeatedly emphasized that facts supporting the reliability of an informant "need not take any particular form." *Jackson*, 470 F.3d at 307 (quoting *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir.2005)). Indeed, "as long as the issuing judge can conclude

---

whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

independently that the information is reliable, an affidavit based on [an] informant's tip will support a finding of probable cause." *Id.* Defendant's argument ignores precedent that a controlled buy can corroborate informant reliability when observed by officers who follow proper procedures. Although Trooper Smith's affidavit did not indicate the informant's relationship or track-record with Trooper Smith or MSP, the informant's tips were sufficiently independently corroborated by Trooper Smith's organization and observation of the August 2022 controlled buy of methamphetamine from Defendant's house. Under the totality of the circumstances, probable cause supported the search. *See United States v. Alexander*, No. 11-20180, 2011 WL 3799653, at *4 (E.D. Mich. Aug. 29, 2011) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) ("[I]t has been the rare case in which the Sixth Circuit has found a search warrant based on an informant tip to be inadequate *if* the information has been corroborated to some degree.").

### 2. Good Faith Exception to the Exclusionary Rule

In the alternative, even if the warrant lacked probable cause, Defendant is not entitled to suppression because the effectuating MSP troopers reasonably relied on it in good faith.

Although "[t]he Fourth Amendment protects the right to be free form 'unreasonable searches and seizures,'" it is "silent about how this right is to be enforced." *Davis v. United States*, 564 U.S. 229, 231 (2011). Accordingly, the Supreme Court created the "exclusionary rule," as a "deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Id.* This rule is not rigid. Indeed, the Supreme Court has created several exceptions to the exclusionary rule when suppressing evidence obtained in violation of the Fourth Amendment would do "nothing to deter police misconduct." *See id.* When these exceptions apply, even if a Defendant can show that their Fourth Amendment rights have been violated, suppression is not the right remedy.

One such exclusionary rule exception—known as the "good faith" exception—applies when the officer who conducted the search acts in objectively reasonable reliance on a subsequently invalidated warrant. *United States v. Soto*, 794 F.3d 635, 646 (6th Cir. 2015) ("Courts do not suppress evidence that officers 'obtain in objectively reasonable reliance on a subsequently invalidated search warrant.'") (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). The good faith exception was created by the Supreme Court in 1984 in *U.S. v. Leon*.[3] The Sixth Circuit has instructed, following *Leon*, that courts presented with a motion to suppress arguing that a search lacked probable cause must ask "whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's decision. Only when the answer is 'yes' is suppression appropriate." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (internal citations omitted). When answering this question, like the initial probable cause determination, this Court is limited to the "four corners of the [search] affidavit." *United States v. Hython*, 443 F.3d 480, 487 (6th Cir. 2006) (citing *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir.2005)).

The good faith exception to the exclusionary rule is a broad one. Only four circumstances exist where the exception will *not* apply: "(1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or

---

[3] In *Leon,* the Supreme Court found that the exclusionary rule's rationale—to deter unlawful police conduct—does not apply in situations when an officer acts in objectively reasonable reliance on a warrant because "there is no police illegality and thus nothing to deter." *Leon*, 468 U.S. at 921. The Court emphasized that "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.*

where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient." *United States v. Lewis*, No. 22-5593, 2023 WL 5665548 (6th Cir. Sept. 1, 2023) (quoting *United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007).

Here, Defendant argues the good faith exception should not apply and the seized evidence should be surprised at trial because, under the third circumstance discussed above, "the affidavit lacked sufficient indicia of probable cause because the reliability of the [informant] had not been established[.]" ECF No. 25 at PageID.82. But Defendant is mistaken.

In *United States v. Hython*, a case involving a controlled buy of controlled substances, the Sixth Circuit found a warrant affidavit was so lacking in probable cause that officers executing the warrant were unreasonable in their reliance on it, justifying suppression. *Hython*, 443 F.3d at 488–89. But the affidavit in *Hython* was significantly less detailed than Trooper Smith's affidavit, here. In *Hython*, the affidavit did not state when the controlled buy occurred, did not indicate that an investigation was ongoing, and did not indicate whether officers surveilled the location of the controlled buy. *See id.* The Sixth Circuit emphasized that "*any* of these elements" would suffice for the good faith exception to apply. *See id.* at 499. But all "elements" are present, here. Trooper Smith's affidavit disclosed that the controlled buy occurred within "the last 72 hours," prior to the affidavit's submission on August 30, 2022. ECF No. 25-1 at PageID.85, 88. Trooper Smith's affidavit discussed how MSP troopers surveilled Defendant's house—the location of the controlled buy—prior to and during the purchase. *Id.* at PageID.86. And Trooper Smith's affidavit also discussed how the informant was searched and surveilled before and after the controlled buy. *Id.*

Similarly, in *United States v. Lewis*, the Sixth Circuit found a warrant affidavit to be "bare bones" because, aside from "conclusory"[4] and "boilerplate" language, the affidavit stated merely that an "HSI investigation identified [the defendant] . . . as a person of interest" but did "not explain what 'HSI' stands for, why HSI considered [the defendant] to be a person of interest, or the significance of HIS's person-of-interest designation." *Lewis*, 2023 WL 5665548 at *5–6. Further, although the affidavit stated that, during a prior search, "it became apparent that [defendant] had used his laptop to view images of sexual exploitation[,]" the Sixth Circuit emphasized that this "did not provide a factual basis upon which a *magistrate* could independently reach that conclusion." *Lewis*, 2023 WL 5665548 at *6 (emphasis in original). In contrast, Trooper Smith's affidavit did not just *say* Defendant sold crystal methamphetamine from his house, the affidavit *showed* it. Trooper Smith stated that he organized the controlled buy and personally observed the confidential informant call Defendant, negotiate the amount of crystal methamphetamine to be sold, its price, and the location where the buy would occur—Defendant's house. *See* ECF No. 25-1 at PageID.86. Trooper Smith stated that the informant "was surveilled directly to [Defendant's] residence" and was observed entering with nothing but the agreed-on purchase price in BAYANET bills and exiting shortly after with nothing but the agreed-on amount of methamphetamine. *See id.*

---

[4] Notably, the affidavit in *Lewis* was similar to Trooper Smith's affidavit insofar as both contained conclusory statements regarding the affiant's "knowledge, experiencing, and training[.]" *Compare United States v. Lewis*, 81 F.4th 640, 646 (6th Cir. 2023) *with* ECF No. 25-1. Although the Sixth Circuit found this section of the *Lewis* affidavit "fail[ed] to set forth any factual information" and was "tantamount to . . . a conclusory statement[,]" this finding alone is not why the Sixth Circuit found the affidavit "bare bones" to justify suppression. Importantly, the affidavit in *Lewis* contained *no other factual information* upon which a magistrate judge could base a probable cause finding and *only* contained the conclusory statements of the officer-affiant. *Lewis*, 81 F.4th at 648–50. Trooper Smith's affidavit, on the other hand, contained a considerable amount of information aside from his beliefs based on his education, training, and experience. ECF No. 25–1 at PageID.85–86.

- 12 -

Unlike the "bare bones" affidavits in *Lewis* and *Hython*, and contrary to Defendant's assertions, Trooper Smith's affidavit was not so lacking in probable cause that the MSP troopers who executed the warrant were unreasonable in their reliance upon it. Therefore, even if the warrant lacked probable cause in violation of the Fourth Amendment—which it did not—the drugs and guns obtained from the search will not be suppressed as the good faith exception to the exclusionary rule applies.

### B. "No-Knock Warrant" and Exigency

Lastly, Defendant argues that the evidence seized from the August 31 search should be suppressed because "the police . . . [operated] under a no-knock warrant," but "there were no exigent circumstances" justifying a no-knock warrant in the first place. ECF No. 25 at PageID.79. Defendant's argument is misplaced because Trooper Smith's affidavit sufficiently detailed exigency to warrant a no-knock entry and MSP troopers knocked and announced their presence before searching Defendant's house.

The "knock-and-announce rule" reflects the "ancient" common law principle that "law enforcement officers must announce their presence and provide residents an opportunity to open the door." *Hudson v. Michigan*, 547 U.S. 586, 589 (2006). Despite its title, the knock-and-announce rule does not *require* a knock or a set of "magic words;" rather, it requires "only that the occupant 'know who is entering, why he is entering, and be given a reasonable opportunity to surrender his privacy voluntarily.'" *United States v. Hardin*, 106 F. App'x 442, 446 (6th Cir. 2004); *United States v. Spikes*, 158 F.3d 913, 925 (6th Cir. 1998). In 1995, the Supreme Court held that this "rule was also a command of the Fourth Amendment." *Id.*

But this command is not absolute. Since 1995, the Court has "noted the many situations [or exigencies] in which it is not necessary to knock and announce" including (1) when officers

are threatened with physical violence; (2) when there is reason to believe that evidence would likely be destroyed if advance notice were given and (3) when knocking and announcing would be futile. *Hudson*, 547 U.S. at 589–90 (internal citations omitted). Importantly, so long as officers have "reasonable suspicion . . . under the particular circumstances" that one of these three grounds exist, the Fourth Amendment does not require officers to knock-and-announce their presence prior to a search. *See id.* at 590 (quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)). The Supreme Court has stressed "[t]his showing is not high." *Id.* (quoting *Richards*, 520 U.S. at 394, 117 S. Ct. 1416). "When a warrant applicant gives reasonable grounds to [believe that one of these three exigencies exist], a magistrate judge acts within the Constitution by authorizing a 'no-knock' entry." *United States v. Banks*, 540 U.S. 31, 36 (2003).

Here, Trooper Smith requested a "no-knock" entry in his warrant affidavit because he believed "the person or persons located inside the residence may use or attempt to use a firearm or other weapon against officers executing this warrant or attempt to destroy or hide controlled substances prior to the section of this warrant." ECF 25-1 at PageID.87 (emphasis omitted). Judge Clark agreed and indicated "[t]his search warrant is to be executed as a 'no[-]knock' search warrant." *Id.*

Defendant cites *United States v. Johnson*, 267 F.3d 498, 500 (6th Cir. 2001) for the proposition that this Court "must determine whether the allegations contained in [Trooper Smith's] [a]ffidavit 'were sufficient to support a conclusion that exigent circumstances justified the issuance of no-knock authority." ECF No. 25 at PageID.79. And Defendant argues "there was no allegation to support an exigent circumstance for a no-knock warrant except for Trooper . . . Smith's speculative assertion that 'persons located inside the residence may use or attempt to use a firearm or other weapon against officers executing this warrant or attempt to destroy or hide controlled

substances prior to the execution of this warrant.'" ECF No. 25 at PageID.79. But Defendant is mistaken for two reasons.

First, Defendant's *Johnson* citation is incomplete. Immediately preceding Defendant's selected quote, the Sixth Circuit explained that it only analyzed whether the no-knock warrant affidavit showed sufficient exigency because the officers in *Johnson* did *not* knock and announce before the search. *Johnson*, 267 F.3d at 500. Indeed, Defendant's entire no-knock argument ignores the fact that the MSP troopers who searched Defendant's house on August 31, 2022 *did* knock and announce before the search, despite authorization not to.[5] *See* ECF No. 28-3 at PageID.117 (noting that "Police, Search Warrant" was announced "numerous times" in front of Defendant's residence by a marked patrol vehicle). Indeed, body camera footage played during the September 20, 2023 evidentiary hearing confirmed MSP's knocking and announcing.

Second, even if MSP troopers did not knock and announce before the August 31, 2022 search, Trooper Smith's affidavit articulated sufficient exigency to support a no-knock entry. In addition to Trooper Smith's training and nine years of experience, his affidavit states that the confidential informant told him Defendant's house was equipped with "dead man" locks and a camera system which reasonably suggest that Defendant may have acted to protect what was inside his house. *See* ECF No. 25-1 at PageID.86. And Trooper Smith testified at the October 17, 2023

---

[5] To the extent Defendant argues for suppression merely because he believes the police did *not* knock and announce, *see* ECF No. 25 at PageID.71 (arguing the search "was executed without knocking and announcing before entry"), 74 (noting the police "did not knock or announce . . . before entering [Defendant]'s residence"), 79 (noting police "acted" under a no-knock warrant) Defendant's argument fails for two reasons. First, plainly, the troopers who searched Defendant's house on August 31, 2023 did knock and announce. *See* ECF No. 28-3 at PageID.117. Second, even if the troopers did not knock and announce, their hypothetical failure to do so does not result in suppression. *Hudson*, 547 U.S. at 603 ("[T]he causal link between a violation of the knock-and-announce requirement and a later search is too attenuated to allow suppression."); *United States v. Roberge*, 565 F.3d 1005, 1010 (6th Cir. 2009) ("[S]uppression is not a remedy for [a] violation of the knock-and-announce rule.")

evidentiary hearing that "dead man" locks prevent officers from quickly entering a residence at the inception of a search, exposing officers to danger and allowing defendants time to destroy evidence.[6] Trooper Smith's affidavit contained more than "boilerplate language" and "generalized allegations of drug dealing within the residence." *Johnson* 247 F.3d at 501. Instead, it contained sufficient exigency to justify a no-knock warrant, even though the search was announced.

In sum, probable cause supported the August 31 search because Trooper Smith's affidavit detailed his organization and observation of the controlled buy between the confidential informant and Defendant. And even if the warrant lacked probable cause, it was not so "bare bones" to warrant the good-faith exception to the warrant requirement inapplicable. Defendant's no-knock argument also fails because the search was announced and, even if it wasn't, Trooper Smith's affidavit contains sufficient evidence of exigency. Accordingly, Defendant's Motion to Suppress, ECF No. 25, will be denied.

### III. Defendant's Motion to Dismiss

Defendant also seeks dismissal of Count IV of the First Superseding Indictment, charging him with being a felon in possession of a firearm, in violation 18 U.S.C. § 922(g)(1). ECF No. 21. Defendant argues the statute is both facially unconstitutional and unconstitutional as applied to him in light of the Supreme Court's new "historical tradition" test to assess whether a law violates the Second Amendment, promulgated in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, (2022). ECF No. 30 at PageID.124. But "the overwhelming consensus" of federal courts is that "*Bruen* is no barrier to a § 922(g)(1) prosecution." *United States v. Bluer*, No. 22-

---

[6] At the October 17, 2023 evidentiary hearing, Defense counsel argued that no exigency for a no-knock warrant existed because Defendant was detained in his car at the time of the search. *See* ECF No. 28-3 at PageID.117. But, as the Government countered, Trooper Smith had no way of knowing that Defendant would be detained at the time he filed his affidavit for a no-knock warrant.

20557, 2023 WL 3309844, at *6 (E.D. Mich. May 8, 2023). So, Defendant's Motion to Dismiss, ECF No. 26, will be denied.

## A.

The Second Amendment guarantees "the right of the people to keep and bear [a]rms[.]" U.S. CONST. amend. II. In its 2008 decision *D.C. v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment protects the right of an individual to possess firearms for historically lawful purposes, including for self-defense in the home. And in its 2010 decision *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court held that the Second Amendment is "fundamental" and incorporated against the states through the Fourteenth Amendment. But *McDonald* and *Heller* had holes. The Court in *Heller* did not elaborate a methodology—or a level of scrutiny—for courts to apply when analyzing the constitutionality of laws implicating the Second Amendment. MICHAEL A. FOSTER, CONG. RSCH. SERV., LSB10773, THE SECOND AMENDMENT AT THE SUPREME COURT: *NEW YORK STATE RIFLE & PISTOL ASS'N V. BRUEN* 2 (2022). As a result, federal courts developed and historically applied a two-step test to assess Second Amendment claims. *Bruen*, 142 S. Ct. at 2126.

The first step analyzed whether the challenged law burdened conduct protected by the Second Amendment, based on the "original scope of the right based on its historical meaning." *Id.* If the challenged law did not burden Second Amendment conduct, "then the analysis [could] stop there; the regulated activity [was] categorically unprotected." *Id.*; *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012), *abrogated by Bruen*, 142 S. Ct. 2111. If the challenged law was found to burden Second Amendment conduct, then courts proceeded to step two and applied either

- 17 -

intermediate[7] or strict scrutiny,[8] depending on whether the challenged law was found to burden "core" Second Amendment protections.[9] *See Bruen*, 142 S. Ct. at 2126–27.

But the Supreme Court in *Bruen* felt that the traditional two-step approach was "one step too many." *Bruen*, 143 S. Ct. at 2127. Specifically, the Supreme Court affirmed the first step, noting it was "consistent with *Heller*" as analyzing the Second Amendment's text and history, but rejected the second step, noting that *Heller* and *McDonald* did not call for means-end scrutiny. *Id.* Instead, the Supreme Court articulated a new test focused solely on text and history:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2129–30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

In some cases, the Supreme Court recognized the application of this test will be "fairly straightforward." *Id.* at 2131.

> For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during

---

[7] Under intermediate scrutiny, a challenged law will be upheld if it is "substantially related to an important governmental objective" or interest. *Clark v. Jeter*, 486 U.S. 456 (1988).

[8] "Under strict scrutiny, the government must adopt 'the least restrictive means of achieving a compelling state interest.'" *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021) (quoting *McCullen v. Coakley*, 573 U.S. 464, 478 (2014)).

[9] "What precisely constitute[d] the 'core' of the Second Amendment, however, . . . produced some disagreement among the circuit courts, particularly with respect to whether such protections extended beyond the home." MICHAEL A. FOSTER, CONG. RSCH. SERV., LSB10773, THE SECOND AMENDMENT AT THE SUPREME COURT: *NEW YORK STATE RIFLE & PISTOL ASS'N V. BRUEN* 2 (2022). But courts "generally maintain[ed] that the core Second Amendment right is limited to self-defense *in the home*." *Bruen*, 142 S. Ct. at 2126 (internal quotations omitted) (emphasis in original).

this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.

*Id.* at 2131. But the Supreme Court also recognized that some applications will be "more nuanced[.]" *Id.* at 2132. Because firearms, societal norms, and safety rationales have evolved since the 18th century, the Supreme Court clarified that, when confronting present-day laws that were "unimaginable" at the founding, courts should determine whether the modern law is "relevantly similar" to a historical analogue. *Id.* (emphasis added). The Court provided two helpful metrics for relative similarity: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133 (citing to *McDonald*, 561 U.S. at 767 and *Heller*, 554 U.S. at 599).

**B.**

Count IV of the First Superseding Indictment charges Defendant as a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 21 at PageID.60. Defendant seeks dismissal of this Count arguing that, in light of *Bruen*, § 922(g)(1) is both facially unconstitutional and unconstitutional as applied it him. *See generally* ECF No. 30 at PageID.128–37. The Government responds that *Bruen* did not invalidate binding Supreme Court and Sixth Circuit precedent which upheld the facial validity of 18 U.S.C. § 922(g)(1); ECF No. 36 at PageID.155–59; and that § 922(g)(1) is constitutionally applied to Defendant, a prior felon. *Id.* at PageID.161.

**1.**

As the Government correctly argues, Defendant's "facial challenge to § 922(g)(1) must fail." *Id.* at PageID.154. "A facial challenge . . . is, of course, the most difficult challenge to mount successfully, since the challenger must establish that *no* set of circumstances exist under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Defendant cannot make this showing. Neither the Supreme Court nor the Sixth Circuit have held, post-*Bruen*, that § 922(g)(1) is facially unconstitutional. And pre-*Bruen* precedent from both Courts mandates the

opposite conclusion. In *Heller*, decided 15 years before *Bruen*, the Supreme Court held that "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful."[10] *Heller*, 554 U.S. at 626 n. 26. And *Bruen* left *Heller* untouched. *Bruen*, 142 S. Ct. 2122 (noting the holding was "consistent with *Heller*"), 2126 (noting the holding was "in keeping with *Heller*), 2131 (noting that the test "set forth in *Heller*" continues to "apply today"). Indeed, concurring Justice Alito emphasized that *Bruen* "decides *nothing* about *who* may lawfully possess a firearm" and noted the holding expressly does not "disturb[] anything that [the Court] said in *Heller*[.]" *Id.* at 2157 (Alito, J., concurring) (emphasis added). And concurring Justice Kavanaugh, joined by Chief Justice Roberts, reassured that *Bruen* did not alter longstanding prohibitions on the possession of firearms by felons. *Id.* at 2162 (Kavanaugh, J., concurring).

In addition to the Supreme Court, the Sixth Circuit has repeatedly and plainly held, pre-*Bruen*, that "prohibitions on felon possession of firearms do not violate the Second Amendment." *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010); *see also United States v. Frazier*, 314 F. App'x 801 (6th Cir. Nov.19, 2008); *United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *2 (6th Cir. Mar. 7, 2022); *United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir. 2010); *United States v. Khami*, 362 F. App'x 501, 507 (6th Cir. 2010). These pre-*Bruen* opinions remain binding on this Court.[11] *United States v. McNeil*, No. 223CR20229TGBEAS, 2023 WL 6627972,

---

[10] Even if this conclusion in *Heller* is best characterized as dicta, Sixth Circuit policy requires this Court to "follow Supreme Court dicta, particularly when there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *In re Baker, 791* F.3d 677, 682 (6th Cir. 2015); *United States v. Marlow*, 278 F.3d 581, 588 n.7 (6th Cir. 2002).
[11] This Court has rejected post-*Bruen* facial challenges to § 922(g)(1), affirming the statute's constitutionality, at least 13 times. *See, e.g.*, *United States v. McNeil*, No. 223CR20229TGBEAS, 2023 WL 6627972 (E.D. Mich. Oct. 11, 2023); *United States v. Nailor*, No. 23-20076, 2023 WL 6049746 (E.D. Mich. Sept. 15, 2023); *United States v. Dobbs*, No. CR 22-20068, 2023 WL 4596756 (E.D. Mich. July 18, 2023); *United States v. Holmes*, No. CR 23-20075, 2023 WL 4494340 (E.D. Mich. July 12, 2023); *United States v. Nelson*, No. 222CR20512TGBJJCG, 2023 WL 4249367 (E.D. Mich. June 29, 2023); *United States v. Keels*, No. 23-20085, 2023 WL 4303567

at *2 (E.D. Mich. Oct. 11, 2023) (denying defendant's motion to dismiss claiming § 922(g)(1) was

facially unconstitutional because "the Sixth Circuit's precedent in *Carey* requires this Court" to

reach the same conclusion—that prohibitions on felon possession of firearms are constitutional).

### 2.

Defendant's "as applied" challenge fares no better.[12] Recall, under the new test articulated

in *Bruen*, the Government's burden to show that a challenged law is "consistent with the Nation's

historical tradition of firearm regulation" is only triggered when the Second Amendment's "plain

text" cover's the movant's conduct. *Bruen* 142 S. Ct. at 2130. Defendant argues his conduct comes

within the "plain text" of the Second Amendment because, despite his felon status, he is a member

of the "people" the Second Amendment protects and the firearms he possessed were "in common

use." ECF No. 30 at PageID.128–31. Defendant then argues that § 922(g)(1), as applied to him, is

inconsistent with this Nation's historical tradition of firearm regulation. ECF 30 PageID.132–37.

The Government contests both claims. ECF No. 36 at PageID.153.

Defendant's argument fails at its first step: Defendant is not a member of the "people" the

Second Amendment protects. *Bruen* emphasized that the Second Amendment "protect[s] the right

of an ordinary, *law-abiding* citizen to possess a handgun for self-defense." *Bruen*, 142 S. Ct. at

2122 (citing *Heller*, 554 U.S. at 570) (emphasis added). But felons are not law-abiding citizens.

---

(E.D. Mich. June 30, 2023); *United States v. Haywood*, No. CR 22-20417, 2023 WL 3669333
(E.D. Mich. May 25, 2023); *United States v. Neely*, No. CR 22-20513, 2023 WL 3669346 (E.D.
Mich. May 25, 2023); *United States v. Carter*, No. 22-20477, 2023 WL 3319913 (E.D. Mich. May
9, 2023); *United States v. Bluer*, No. 22-20557, 2023 WL 3309844 (E.D. Mich. May 8, 2023);
*United States v. Hazley*, No. CR 22-20612, 2023 WL 3261585 (E.D. Mich. May 4, 2023); *United
States v. Taylor*, No. 22-CR-20315, 2023 WL 3098653 (E.D. Mich. Apr. 26, 2023); *United States
v. Burrell*, No. 21-20395, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022).

[12] This Court has rejected post-*Bruen* "as-applied" challenges against § 922(g)(1) at least three
times. *Nailor*, 2023 WL 6049746; *Keels*, 2023 WL 4303567; *United States v. Smith*, No. 22-CR-
20351, 2023 WL 2215779 (E.D. Mich. Feb. 24, 2023).

*Smith*, 2023 WL 2215779, at *2. Indeed, "the question of whether felons fall within the scope of the Second Amendment's protection as already been answered: they do not." *Hazley*, 2023 WL 3261585, at *1; *Neely*, 2023 WL 3669346 at *1. Accordingly, Defendant's argument that the "plain text" of the Second Amendment covers his conduct is "categorically barred."[13] *Id*; *See also Nailor*, 2023 WL 6049746, at *5 (noting that "the Sixth Circuit [has] held that a felon's right . . . to possess a firearm does not fall under the plain text of the Second Amendment. Therefore, even under *Bruen*[,] [defendant's] conduct may be regulated, and his challenge fails.").

But, even if this Court were to assume that the Second Amendment's "plain text" applies to Defendant, Defendant cannot survive the second prong of *Buren*, either, because this Court has already held that the felon-in-possession statute is consistent with this Nation's historical tradition of firearm regulation. Admittedly, there are "two schools of thought" on whether § 922(g)(1) is consistent with historical firearms regulation. *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023). On one hand, Defendant cites *Range v. Attorney General*, a non-binding Third Circuit case which found § 922(g)(1) inconsistent with historical firearm tradition and rejected the Government's attempts to analogize § 922(g)(1) to the 1938 Federal Firearms Act, early efforts to disarm certain groups using status-based restrictions, and early forfeiture statutes. *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023); ECF No. 30 at PageID.129–30, 132–37.

But this Court has already held that *Range* is an "outlier." *Keels*, 2023 WL 4303567, at *6. Nearly every other appellate court to consider § 922 since *Bruen* falls within the second school of

---

[13] In addition to Defendant's felon status, the specific firearms Defendant possessed also may remove his conduct from the "plain text" of the Second Amendment. The Second Amendment "protects only the carrying of weapons that are . . . 'in common use[,]' as opposed to those that are 'highly unusual in a society at large.'" *Bruen*, 142 S. Ct. 2143 (quoting *Heller*, 554 U.S. at 627). And although handguns are undisputedly "common," *Id.* at 2129, one of the *five* firearms seized from Defendant's house was a Glock 19 modified to operate as a fully automatic machinegun. ECF No. 1 at PageID.4–5.

thought and has upheld the statute's constitutionality as consistent with historical firearm regulations. *Id.* (citing *United States v. Gonzalez*, No. 22-1242, 2022 WL 4376074, at *2 (7th Cir. Sept. 22, 2022) (§ 922(g)(1) as applied to violent felons); *Sitladeen*, 64 F.4th 978, 984-87 (8th Cir. 2023) (§ 922(g)(5)(A)); *United States v. Jackson*, 69 F.4th 495, 501-02 (8th Cir. 2023) (§ 922(g)(1) as applied); *United States v. Haas*, No. 22-5054, 2022 WL 15048667, at *2 (10th Cir. Oct. 27, 2022) (§ 922(g)(8))). Indeed, the Eighth Circuit in *United States v. Jackson* reached the opposite conclusion of *Range* and held that § 922(g)(1) is consistent with this Nation's history and tradition of firearm regulation. *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) ("History shows that the right to keep and bear arms was subject to restrictions that included prohibitions on possession by certain groups of people.") And this Court finds the Eighth Circuit's reasoning in *Jackson* more persuasive than the Third Circuit's in *Range*. *See Dobbs*, 2023 WL 4596756, at *3 (noting that the Eastern District of Michigan is "inclined to follow the Eight Circuit . . . in continuing to find [§ 922(g)(1)] constitutional as applied to . . . convicted felons[.]"); *Smith*, 2023 WL 2215779, at *3 (noting "felon-in-possession prohibitions have sufficient grounding in historical tradition to withstand a challenge under *Bruen*" and that § 922(g)'s restriction on felon firearm possession has a long established history in English and American common law.)

In sum, Defendant's facial challenge of § 922(g)(1) fails because *Bruen* did not undue binding Supreme Court and Sixth Circuit precedent upholding the constitutionality of the felon-in-possession statute. Defendant's "as applied" challenge meets a similar fate because his conduct falls outside the "plain text" of the Second Amendment and, even if he was a member of the "people" afforded Second Amendment protection, § 922(g)(1) passes *Bruen*'s historical analogue test. Accordingly, Defendant's Motion to Dismiss, ECF No. 30, will be denied.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion to Suppress Evidence, ECF No. 25, is **DENIED**.

Further, it is **ORDERED** that Defendant's Motion to Dismiss Count IV of the First Superseding Indictment, ECF No. 30, is **DENIED**.

**This is not a final order and does not close the above-captioned case.**

Dated: November 7, 2023                              s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

!